**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

**CIVIL ACTION NO. 99-507-JBC**

**AMERICAN CIVIL LIBERTIES UNION**
**OF KENTUCKY, ET AL.,**                                                **PLAINTIFFS,**

**V.**                          <u>**MEMORANDUM OPINION AND ORDER**</u>

**MCCREARY COUNTY, KENTUCKY, ET AL.,**                          **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

This matter is before the court on the defendants' motion for summary judgment (DE 116) and the plaintiffs' motions for summary judgment (DE 132) and partial summary judgment (DE 134).  The court, having reviewed the record and being otherwise advised, will deny the motions.

**I.     Factual Background and Procedural History**

Because the facts in this case have been discussed numerous times, *see McCreary County v. ACLU*, 545 U.S. 844, 851-58 (2005); *ACLU v. Mercer County*, 432 F.3d 624, 628-31 (6th Cir. 2005); *ACLU v. McCreary County*, 354 F.3d 438, 440-44 (6th Cir. 2003); *ACLU v. McCreary County*, 145 F. Supp. 2d 845, 846-47 (E.D. Ky. 2001), the court will only briefly summarize the factual and procedural history.

In 1999, McCreary County and Pulaski County, Kentucky, each posted a copy of the Ten Commandments in their respective courthouses.  Various county orders and ceremonies surrounded the mounting of these initial displays.  The

American Civil Liberties Union of Kentucky, et al. ("ACLU") brought this action and sought a preliminary injunction requiring removal of the displays based on alleged violations of the Establishment Clause of the U.S. Constitution. Prior to the resolution of the request for an injunction, the Counties altered their displays and passed resolutions authorizing those new displays. The new displays included documents other than the Ten Commandments, but the additional documents were largely religious in nature.[1] The resolutions authorizing the second displays included language emphasizing the importance of religion. Following the posting of the second displays, this court granted the plaintiffs' motion for a preliminary injunction and ordered that the displays be removed.

The Counties complied with the injunction by removing the displays, but then posted new displays. Prior to posting these third displays, the Counties hired new lawyers and voluntarily dismissed an appeal from the initial preliminary injunction. The third displays consisted of nine documents of equal size, including a copy of the Ten Commandments, and explanatory phrases to accompany each of the

---

[1] "Specifically, the Courthouse displays were modified to consist of: (1) [the 'endowed by the Creator' passage] from the Declaration of Independence; (2) the Preamble to the Constitution of Kentucky; (3) the national motto of 'In God We Trust'; (4) a page from the Congressional Record . . . declaring it the Year of the Bible and including a copy of the Ten Commandments; (5) a proclamation by President Abraham Lincoln designating April 30, 1863 a National Day of Prayer and Humiliation; (6) an excerpt from President Lincoln's 'Reply to Loyal Colored People of Baltimore upon Presentation of a Bible' reading, 'The Bible is the best gift God has ever given to man.'; (7) a proclamation by President Ronald Reagan marking 1983 the Year of the Bible; (8) the Mayflower Compact." *McCreary County*, 354 F.3d at 442.

2

documents.[2]  The collection of documents in the third displays is referred to as "The Foundations of American Law and Government Display" (hereinafter "Foundations Displays").[3]  At the time the third displays were erected, the Counties did not repeal the resolutions that authorized the second displays or pass new resolutions authorizing the third displays.  This court, acting upon a motion by the ACLU, expanded the preliminary injunction to include the third displays, and then the defendants appealed.

The Sixth Circuit Court of Appeals upheld the preliminary injuction, *McCreary County*, 354 F.3d at 438, whereupon the United States Supreme Court granted the defendants' petition for certiorari.  After oral argument, but before the Supreme Court opinion was released, the Counties repealed and repudiated the resolutions

---

[2] In addition to the Ten Commandments, the third displays included: the Magna Carta, the Declaration of Independence, the Bill of Rights, the lyrics of the Star Spangled Banner, the Mayflower Compact, the National Motto, the Preamble to the Kentucky Constitution, and a picture of Lady Justice.

[3] The purpose of the Foundations Displays was stated in the explanatory phrases accompanying its documents.  The explanatory statement for the Ten Commandments reads:
> "The Ten Commandments have profoundly influenced the formation of Western legal thought and the formation of our country.  That influence is clearly seen in the Declaration of Independence, which declared that 'We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness.'  The Ten Commandments provide the moral background of the Declaration of Independence and the foundation of our legal tradition."

*McCreary County*, 545 U.S. at 856.

3

authorizing the second displays.[4] *McCreary County*, 545 U.S. at 881.  The
Supreme Court saw the Counties' repeals of the 1999 resolutions as "acts of
obviously minimal significance in the evolution of the evidence," *McCreary County*,
545 U.S. at 872 n.19, and affirmed the Sixth Circuit and this court's preliminary
injunction.  The defendants have taken no action since the Supreme Court issued
its opinion.

## II.   Standard of Review

### A.  Summary Judgment Standard

Summary judgment is appropriate only when there are no genuine issues of
material fact in dispute and the moving party is entitled to judgment as a matter of
law.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The moving party's burden
can be satisfied by demonstrating that there is an absence of evidence to support
the non-moving party's case.  *Id*. at 324-25.  To survive summary judgment, the
non-moving party must come forward with evidence on which the jury could
reasonably find in its favor.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252
(1986).  The non-moving party must present more than a mere scintilla of evidence
to defeat a motion for summary judgment.  *Street v. J.C. Bradford & Co.*, 886 F.2d
1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56 (e).  The court must view all of the
evidence in the light most favorable to the party opposing summary judgment.  *See*

---

[4] Oral arguments were held on March 2, 2005 before the United States
Supreme Court.  On March 8, 2005, and March 10, 2005, McCreary and Pulaski
Counties, respectively, each adopted a resolution that repealed and rescinded the
December 1999 resolution relating to the second displays.

4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.  Permanent Injunction Standard

In general, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."  *Amoco Prod. Co. v. Village of Gambell* , 480 U.S. 531, 546 n.12 (1987) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981)).  In the context of the present case, a permanent injunction is appropriate only if a party can establish that it suffered a constitutional violation from which it will suffer continuing and irreparable injury for which no adequate remedy at law exists.  *E.g.*, *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006); *see also Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998) (holding that "[w]here the plaintiff establishes a constitutional violation after a trial on the merits, the plaintiff will be entitled to permanent injunctive relief" after showing "1) a continuing irreparable injury if the court fails to issue the injunction, and 2) the lack of an adequate remedy at law").

### III.    Legal Analysis

The plaintiffs request that the court make permanent the preliminary injunctions issued against McCreary and Pulaski Counties.[5]  The plaintiffs' motion

---

[5] Initially this case involved the Harlan County Schools as well.  Because the claims against the Harlan County Schools have become moot, the court will dismiss those claims.

for partial summary judgment seeks to make permanent the court's first preliminary injunction which enjoined the second displays, and their motion for summary judgment seeks to make the court's supplemental preliminary injunction permanent. The defendants, in turn, argue that the plaintiffs' challenges to the second displays are moot, and that a permanent injunction would be inappropriate.[6]  As discussed below, the court will deny all of the motions because none of the parties are entitled to judgment as a matter of law at this time and further because the second displays are no longer involved in the case.

### A.  The Establishment Clause and the "Purpose" Analysis

Government action violates the Establishment Clause if the action does not have "a secular legislative purpose." *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971).  The government must maintain religious neutrality and is clearly not doing so when it "acts with the ostensible and predominant purpose of advancing religion . . . ." *McCreary County*, 545 U.S. at 860.  In determining whether there is a violation of the Establishment Clause, courts may look to the acting party's purpose, and that "purpose" analysis "may be dispositive of the constitutional enquiry . . . ." *McCreary County*, 545 U.S. at 850-51.

The secular purpose advanced by the government actors must be more than a "trivial rationalization." *Id.* at 859.  "[A]lthough a legislature's stated reasons will

------

[6] The defendants also raise the argument that the plaintiffs lack standing. This court, the Sixth Circuit, and the Supreme Court have previously reached the merits of the case, however, so the court will not now consider the issue of standing.

generally get deference, the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." *Id.* at 864 (citing *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000)); *see also id.* at 865 n.11 ("a secular purpose must be serious to be sufficient").

When "scrutinizing purpose," the court looks to official actions and "openly available data" to determine whether the government's objectives are religious. *Id.* at 862-63 ("official objective emerges from readily discoverable fact, without any judicial psychoanalysis of a drafter's heart of hearts"). The "purpose" analysis should take into account the evolution and development of the displays at issue. *Id.* The court cannot ignore the history of the religious government action, including the progression of the contested displays. *Id.* at 859.

### 1. The Context of the Government Action

Whether the government's purpose is to advance religion is measured by an "objective observer" standard. The objective observer is presumed to take into account the "text, legislative history, and implementation" of the government action. *McCreary County*, 545 U.S. at 862 (quoting *Santa Fe*, 530 U.S. at 308). The objective observer has knowledge of not only the most recent events surrounding a government action, but also any previous events, history, and background. As the standard by which purpose is determined, the objective observer is "presumed to be familiar with the history of the government's actions and competent to learn what history has to show." *Id.* at 866. In response to the

7

defendants' argument that purpose should be determined based on the most recent events rather than the entire series of events, the Supreme Court specifically noted that "the world is not made brand new every morning." *Id.* (noting that "reasonable observers have reasonable memories").

Since context matters when a court determines whether government action constitutes a violation of the Constitution, the court's decision may be altered by factors other than the action itself.  Thus, government action, such as posting the Foundations Displays, may be found constitutional in one situation and yet unconstitutional if done under different circumstances in a separate instance.  The Supreme Court acknowledged that "it will be the rare case in which one of two identical displays violates the purpose prong" but also states, "where one display has a history manifesting sectarian purpose that the other lacks, it is appropriate that they be treated differently . . . ."  *Id.* at 866 n.14.  The intent of the government action has a bearing on its constitutionality, and the court may consider the context surrounding the action when determining the underlying purpose.  *See id.* ("[I]t will matter to objective observers whether posting the Commandments follows on the heels of displays motivated by sectarianism, or whether it lacks a history demonstrating that purpose.").

When a display identical to the Foundations Displays at issue here was posted in Mercer County, Kentucky, the trial court found no constitutional violation. Upholding that decision, the Sixth Circuit found that Mercer County's stated

8

purpose, which was to recognize American legal traditions, was supported by the context and was predominantly secular.[7]  *Mercer County*, 432 F.3d at 627, 632. In Mercer County, only one display had been created and one county action had been taken, both of which occurred after a county resident's request to erect the Foundations Displays.  That same resident actually paid for and hung the displays himself.  There were no prior unconstitutional displays in the county to taint the context and history as viewed by an objective observer.  The Sixth Circuit found that "[a] reasonable observer would not view this display as an attempt by Mercer County to establish religion. . . ."  *Id.* at 632.

Mercer County and the instant case involve identical government action which is constitutional in one instance but unconstitutional in the other.  As the defendants acknowledge in their motion, "[t]he Supreme Court in this case held that the first two displays evidenced a predominantly religious purpose."  DE 117 at 10 (citing *McCreary County*, 545 U.S. at 844).  The Supreme Court additionally found that the Counties' purpose did not change with the posting of the third displays.  *McCreary County*, 545 U.S. at 873.  In McCreary and Pulaski Counties, the objective observer would be aware of the history of the displays and thus would have knowledge of the impermissible purpose.  In Mercer County, the

---

[7] "[T]he purpose for erecting the 'Foundations' display was that 'all of the documents, including the Ten Commandments, have played a role in the formation of our system of law and government . . . . [The] display is not intended [to], nor does it, endorse or promote religion.  It simply acknowledges our history.'" *Mercer County*, 432 F.3d at 627, 632 (quoting Affidavit of Mercer County Judge Executive Charles H. McGinnis).

objective observer sees no such taint.  The content of the displays, without consideration of its context, is thus not dispositive.

### 2.  Purging the Taint of the Impermissible Purpose

Although the Supreme Court found that the Counties in this matter had an impermissible purpose that made their actions unconstitutional and that this purpose continued even with the third displays, and even after the second-display resolutions were repudiated, the Court also found "that the Counties' past actions [do not] forever taint any effort on their part to deal with the subject matter." *McCreary County*, 545 U.S. at 873-74.  Since it is possible to purge the taint of the impermissible religious purpose, it necessarily follows that the injury from the constitutional violation is not "continuing" as required by the standard for a permanent injunction.  *See Mercer County*, 432 F.3d at 633 ("The [*McCreary County*] majority narrowly tailored its opinion to the facts as they existed at the time of appeal, even to the point of leaving open the possibility on remand of the district court's lifting the preliminary injunction and denying permanent relief." (citing *McCreary County*, 545 U.S. at 873-74)); *see also ACLU v. Rutherford County*, No. 3:02-CV-0396, 2006 WL 2645198, at *10 (M.D. Tenn. Sept. 14, 2006) ("Combined, *McCreary County* and *Mercer County* teach that (1) a public body may post the Ten Commandments in a public building if the display's purpose is secular and the display does not have the primary purpose of advancing or endorsing religion, and, (2) most pertinent to the issues at hand, even if the same

10

public body previously attempted to post the Ten Commandments in an

unconstitutional manner, it may be able to post the Ten Commandments in the

future in a constitutionally permissible manner."). If the Counties take sufficient

actions that purge the taint of their impermissible religious purpose, then the injury

claimed by the plaintiffs will no longer exist and the injunction could be removed.[8]

Therefore, the court will deny the plaintiffs' motion for summary judgment, which

seeks to permanently enjoin the third displays, because they are not entitled to a

permanent injunction as a matter of law.[9]

Turning from the plaintiffs' motion to the defendants' motion, this court

must reject the claim that the Counties' actions taken to date have purged the taint

of an impermissible religious purpose. The defendants have taken no action since

repealing and repudiating the resolutions which accompanied the second displays –

---

[8] A district court in Tennessee denied a permanent injunction in a similar case, stating, "Plaintiffs' request is too broad because it forbids the posting of the Ten Commandments in public buildings in Rutherford County from now until eternity. Plaintiffs have not demonstrated that they will suffer irreparable harm if the Court does not permanently enjoin the display because Plaintiffs have not proven that the constitutional violation found by this Court will be ongoing in the future." *ACLU v. Rutherford County*, No. 3:02-CV-0396, 2006 WL 2645198, at *11 (M.D. Tenn. Sept. 14, 2006).

[9] The plaintiffs' motion for partial summary judgment is moot because it seeks to permanently enjoin the second set of displays, which no longer constitutes an ongoing controversy between the parties. The court may adjudicate only ongoing controversies, and an issue becomes moot when the claims presented have been satisfied or are no longer active, or when the parties lack an interest in the outcome of the case. *See Chirco v. Gateway Oaks, LLC*, 384 F.3d 307, 309 (6th Cir. 2004) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). The defendants have disavowed any intent to reinstate the second displays. *See* DE 136 at 1; DE 117 at 15.

11

renunciations which the Supreme Court rejected as "acts of obviously minimal significance in the evolution of the evidence," *McCreary County*, 545 U.S. at 872 n.19, and a "litigating position." *Id.* at 848.

If defendants' past actions are insufficient to purge the taint, what will suffice?  To constitutionally post the Foundations Displays, the Counties in the present action "must show that they have purged themselves of their original sectarian purpose relating to the posting of the Ten Commandments." *Rutherford County*, 2006 WL 2645198, at *10.  The Counties will have purged the taint only after there are "'genuine changes in constitutionally significant conditions,'" which could include a demonstration of "a predominantly secular purpose." *Id.* (citing *McCreary County*, 545 U.S. at 874, and *Mercer County*, 432 F.3d at 632-33).

When presented with such a genuine change, "district courts are fully capable of adjusting preliminary relief to take account of genuine changes in constitutionally significant conditions." *McCreary County*, 545 U.S. at 874 (citing *Ashcroft v. ACLU*, 542 U.S. 656 (2004)).  Moreover, "the district court should be willing to modify its judgment should the counties later demonstrate a predominantly secular purpose." *Mercer County*, 432 F.3d 624, 632 n.6 (citing *McCreary County*, 545 US at 873-74).

This court will modify its judgment when the "counties later demonstrate a predominantly secular purpose," *id.*, but they have not yet done so.  The Supreme Court reviewed the history of the displays – including repeal and repudiation of the

12

resolutions accompanying the second displays – and found that "[n]o reasonable observer could swallow the claim that the Counties had cast off the objective so unmistakable in the earlier displays." *McCreary County*, 545 U.S. at 872.  The Counties claim to "have done everything they can to distance themselves from the second display, including changing counsel, changing the display, and eventually repealing the December, 1999, Resolution."  DE 117 at 3.  Yet, all of those actions were taken by the Counties prior to the decision of the Supreme Court and they were not enough to purge the religious taint.  If the Supreme Court found the taint inadequately purged, so must this court.

Therefore, the court will deny the defendants' motion for summary judgment because they are not entitled to judgment as a matter of law.

**B.  Resolution of This Case**

Although it is possible to constitutionally post the Ten Commandments, the defendants' actions were unconstitutional and remain so until they have purged the taint of their impermissible religious purpose.

A trial in this matter would be unavailing.  No triable issues of fact exist for resolution by a jury.  The only remaining issue is whether the defendants have taken actions since the Supreme Court decision that demonstrate a predominantly secular purpose for posting the Foundations Displays and that are sufficient to purge the taint of their impermissible religious purpose.  Thus, as a matter of law, neither the defendants nor the plaintiffs are entitled to summary judgment.

13

Accordingly,

**IT IS ORDERED** that the parties' motions for summary judgment or partial

summary judgment (DE 116, 132, 134) are **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiffs' claims against the defendants

Harlan County School District and Don Musselman are **DISMISSED WITH**

**PREJUDICE**.

**IT IS FURTHER ORDERED** that this matter is referred to U.S. Magistrate

Judge James B. Todd for the purpose of conducting a settlement conference,

which is scheduled for October 22, 2007, at 9:00 a.m. in Lexington.

Signed on September 28, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

14