**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON**

**CIVIL ACTION NO. 99-507-JBC**

**AMERICAN CIVIL LIBERTIES UNION
OF KENTUCKY, ET AL.,**                                                  **PLAINTIFFS,**

**V.**                 **MEMORANDUM OPINION AND ORDER**

**MCCREARY COUNTY, KENTUCKY, ET AL.,**                     **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the plaintiffs' motion for an award of statutory attorney fees and costs (R. 179). The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion.

**I. Factual Background and Procedural History**

In November 1999, the American Civil Liberties Union of Kentucky, along with individuals from multiple Kentucky counties, brought a lawsuit against McCreary and Pulaski Counties alleging that the counties violated the Establishment Clause of the First Amendment by erecting certain displays in their respective courthouses.[1] The plaintiffs sought a declaration that the displays were unconstitutional, as well as preliminary and permanent injunctive relief enjoining the counties from continuing their display of the Ten Commandments.

Prior to the court's decision on the request for an injunction, the Counties

---

[1] A lawsuit was also brought against the Harlan County School District for erecting the same display.

altered their displays to include other documents in addition to the Ten Commandments. Following the posting of the second displays, this court granted the plaintiffs' motion for a preliminary injunction against the second displays and ordered removal of the displays. The Counties complied with the injunction by removing the second displays, but then posted new displays. The plaintiffs moved to hold the Counties in contempt for violating the preliminary injunction or, in the alternative, to enter a supplemental preliminary injunction order. This court expanded the preliminary injunction to include the third displays. The defendants appealed the decision to the Sixth Circuit Court of Appeals and then to the United States Supreme Court. Both courts held oral arguments and then affirmed the preliminary injunction.

The parties then filed cross-motions for summary judgment, and this court denied the motions and dismissed the plaintiffs' claims against the Harlan County School District. The plaintiffs filed a motion to alter or amend the court's order denying summary judgment, which was granted. On August 4, 2008, this court declared all three Decalogue displays unconstitutional and permanently enjoined the Counties from erecting the displays.

**II. Legal Analysis**

The plaintiffs move for attorney fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, which authorizes courts to award reasonable attorney fees to prevailing parties in civil rights litigation. *Hensley v.*

*Eckerhart*, 461 U.S. 424, 429 (1983); *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (citation omitted). The parties seeking the fees must show that they are entitled to an award and must document the appropriate hours expended and their hourly rates. *Hensley*, 461 U.S. at 437. The statutory fee awards are meant to attract competent counsel to civil rights cases but are not intended to produce windfalls to attorneys. *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986). The court determines whether the parties requesting fees were prevailing parties and then determines what fee is reasonable. *Wayne*, 36 F.3d at 531. To award a fee amount, a court multiplies the number of hours reasonably expended on the litigation by reasonable hourly rates to arrive at a "lodestar" figure. *Id.*

    **A.  Prevailing parties**

Parties are "prevailing parties," for the purpose of awarding attorney fees, if they are "able to point to a resolution of the dispute which changes the legal relationship between [themselves] and the defendant[s]." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). The defendants state that the plaintiffs' status as prevailing parties "is not finally settled" because there is an appeal pending. R. 190, at 4 n.2. However, the plaintiffs were required to file this motion within the time allowed in the local rules, and the defendants' pending appeal does not have a bearing on the issue of whether the plaintiffs are

3

prevailing parties. The plaintiffs prevailed at many stages of the litigation, including in the court's final judgment which enjoined all three challenged displays and thus materially altered the parties' legal relationship. The plaintiffs, having obtained their requested relief, are prevailing parties in a civil rights litigation and are entitled to an award of attorney fees.

### B. Attorney fees

The number of hours which the attorneys reasonably expended on the litigation is multiplied by a reasonable hourly rate to arrive at an appropriate fee award.[2] The plaintiffs seek recovery for time and expenses incurred with respect to each of the counties' three Decalogue displays, stating that they filed the suit challenging the first displays, obtained preliminary injunctions against the second and third displays, successfully defended the latter preliminary injunction at the Sixth Circuit and the Supreme Court, and ultimately obtained a final judgment enjoining all three displays.[3]

---

[2] The plaintiffs' motion seeks $390,588.00 in fees and $8,133.34 in costs for all work performed through September 3, 2008. A declaration showing 10.7 additional hours of work and seeking $3,210.00 for that work through November 21, 2008, is attached to the plaintiffs' reply brief. The court must award attorney fees for time spent pursuing the recovery of attorney fees. *Weisenberger v. Huecker*, 593 F.2d 49, 53-54 (6th Cir. 1979). Thus, the full amount the plaintiffs seek totals $401,931.34.

[3] The plaintiffs state that they elected to seek fees for only one lawyer, David A. Friedman, except in the case's final stages when they also request fees for William E. Sharp. The plaintiffs chose to voluntarily delete all the hours for co-counsel, all hours for the participants in moot courts, all hours for those who advised and assisted lead counsel, and all hours for paralegals and other professional assistants. R. 191, at 8 n.3.

The defendants argue that the plaintiffs' requested fees are unreasonable because they spent too much time on certain tasks, used vague descriptions for work performed, and requested compensation for tasks which are not compensable.

1. <u>Number of hours</u>

The defendants state that the plaintiffs spent excessive time in the following areas: (1) preparing the appellate brief; (2) keeping their clients informed; (3) preparing for the preliminary injunction hearings; (4) researching certain areas of the law; (5) writing the Supreme Court brief; and (6) preparing for the Supreme Court oral argument. "The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598 (2001).

Based on the content and the length of the appellate brief, the 68 hours expended in preparing it was reasonable. The brief was 52 pages long and it cited more than 50 federal appellate cases and more than 20 scholarly books and articles. Part of the time spent researching and writing was necessary to respond

to specific arguments made by the defendants, including the assertion that American law derived from the Ten Commandments.

Regarding the amount of time Mr. Friedman spent advising his clients about occurrences in the case, the attorney was ethically obligated to keep his clients fully informed of the case's progress. Additionally, it was necessary for certain substantive communications, including those regarding case strategy and analysis, to be prepared by an attorney.

As for the amount of time the plaintiffs' attorney spent preparing for the second preliminary injunction hearing, nearly one-third of that time was spent as a result of the defendants' filing of affidavits mere days before the hearing and after the completion of briefing. The second preliminary injunction involved legal issues that were not previously addressed – specifically whether the third display was sufficient to survive Establishment Clause scrutiny, and the plaintiffs rightfully considered it necessary to fully prepare to argue those points.

The defendants dispute the time spent "researching religious history and moral codes and different versions of the Ten Commandments." R. 190, at 8. It was necessary to spend the time researching those issues to fully respond to the defendants' arguments. The results of the research were incorporated into the plaintiffs' legal arguments, including the argument that the Decalogue was first and foremost a religious document and that the overlap between the Decalogue and American law did not prove causation.

The defendants object to the amount of time spent writing the brief submitted to the Supreme Court. The 200 hours spent on this task was substantial, but it was a reasonable amount of time considering that the Court was expected to be closely divided. Additionally, the brief before the Supreme Court was different from prior briefs because it had to additionally argue what the law should be. Given the closely divided Court in *McCreary County v. ACLU*, 545 U.S. 844 (2005), and the outcome in the companion case *Van Orden v. Perry*, 545 U.S. 677 (2005), it was reasonable to spend that amount of time in preparation. The defendants similarly object to the 200 hours the plaintiffs' attorney spent preparing for Supreme Court oral argument. However, the case itself and the requirement for zealous representation demanded that the attorney devote that amount of time to such preparation.

Much of the time expended on this case was devoted to issues that ultimately persuaded this court, the Sixth Circuit, and the Supreme Court to agree with the plaintiffs' arguments, sometimes by a narrow margin. The court finds that the hours charged were actually and reasonably expended in the prosecution of the litigation.

    2. Specificity of time entries

The defendants argue that the itemized descriptions of the time spent on the case are not sufficiently specific and thus are not compensable. "The key requirement for an award of attorney fees is that '[t]he documentation offered in

support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'" *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *United Slate, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)). The attorneys are not required to "record in great detail how each minute . . . was expended," but are instead expected to "identify the general subject matter of [their] time expenditures." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)).

The billing entries, when taken in the context of the time period and what was occurring in the litigation, are fully descriptive of the tasks performed by the attorneys. A billing entry which states that the time billed was spent on research regarding a reply or response is sufficient information to ascertain what occurred. The products of that expended effort – the briefs filed with the courts – speak for themselves as to the specific tasks which were performed – such as writing, proofreading, cite-checking, and editing – and the specific subjects covered – including the introduction, statement of facts, and legal argument.

The entries in the billing records were maintained contemporaneously with the work. *See Webb v. Bd. of Educ.*, 471 U.S. 234, 238 n.6 (1985) ("Contemporaneously recorded time sheets are the preferred practice."). The

entries are adequate in that they contain sufficient detail to explain what the attorneys' tasks were on that date. Additionally, the entries list tasks separately rather than cumulatively, and the entries are separated by attorney. All of these factors contribute to the court's finding that the time entries provide sufficient detail.

### 3. Travel time and time spent conferring with other attorneys

The defendants dispute whether the time spent traveling to moot courts and to observe a Supreme Court argument is compensable. They additionally argue that the plaintiffs should not receive attorney fees for the time spent conferring with an attorney from another case.

The moot courts were a vital component of preparing for the Supreme Court argument, and the plaintiffs argue plausibly that the two out-of-town moot courts were especially helpful. One of those sessions was at Harvard Law School before a six-member panel that included five former Supreme Court law clerks. Erwin Chemerinsky, the attorney who argued *Van Orden,* also argued at the moot court. The other out-of-town moot court was at Georgetown Law School before a panel made up of faculty and practitioners familiar with Supreme Court practice. Additionally, the travel time was spent preparing for the moot courts and for the Supreme Court oral argument. Further, the moot courts took place within two weeks of the Supreme Court argument, when they would be most beneficial.

The trip to observe a Supreme Court oral argument in a different case was

necessary because it was important to observe the dynamic among the Justices and to become familiar with the setting. Additionally, it was reasonable for counsel to meet with Erwin Chemerinsky, who was present at the same oral argument, to discuss the briefs and strategy.

The defendants finally object to counsel's time spent consulting with counsel in a different case. Such consultation was conducted to gauge the potential effect of the other case's outcome on this case, in which an appeal was pending at the time. It was reasonable for the plaintiffs to explore the potential effect of a different Decalogue case decided in this circuit.

The reasonableness of the plaintiffs' fee request is underscored by the fact that they understated the number of hours expended by deleting the time spent by co-counsel and other professionals who participated in this case. *See infra* n.3. The court finds that all of the claimed time was reasonably spent litigating this action. Thus, the plaintiffs will be awarded attorney fees for the 1294.6 hours spent by Mr. Friedman and the 30.1 hours spent by Mr. Sharp.

    4. <u>Hourly rate</u>

The plaintiffs' motion requests fees at an hourly rate of $300 for Mr. Friedman's time and $180 for Mr. Sharp's time. The defendants object and propose a $200 hourly rate for Friedman and a $125 hourly rate for Sharp.

In deciding the appropriate fee, the court should, as nearly as possible, award the attorneys market-rate fees. *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983).

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). The hourly rate awarded should be adequate to attract competent counsel but not so high as to produce a windfall for the attorneys. *Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 893 (1984)).

The fee award in this case is based on the prevailing market rate for attorneys handling federal constitutional litigation in the Eastern District of Kentucky. The plaintiffs cite various instances in which Mr. Friedman and comparable attorneys in similar cases were awarded fees at an hourly rate of $300 or more. Mr. Friedman was awarded a $300 hourly rate in two First Amendment cases; the court determined one of the awards and the other was agreed upon by the parties. *See Barber v. Louisville-Jefferson County Metropolitan Sewer District*, No. 3:05CV142-R (W.D. Ky. 2007) (fee award at $300 hourly rate); *McQueary v. Conway*, No. 3:06CV24-KKC (E.D. Ky. 2008) (setting agreed $300 hourly rate). Mr. Friedman also states that $300 is below the rate he often charges to fee-paying private practice clients. Moreover, this case involves a specialty area of the law – federal constitutional law, specifically Establishment Clause law – that very few lawyers practice. The requested hourly rates reflect counsels' respective training,

background, experience and skills. Mr. Friedman has nearly thirty years of experience, concentrated in constitutional litigation, civil rights, civil liberties and federal practice. Mr. Sharp has been admitted to practice law in Kentucky since 1999 and is currently a staff attorney for the ACLU of Kentucky, where he participates in federal civil rights litigation. The plaintiffs have shown that their requested rates are reasonable in the relevant market. Thus, the court will award fees based on a $300 hourly rate for Mr. Friedman's expended time and a $180 hourly rate for Mr. Sharp's time.

   5. Lodestar and special circumstances

The court calculates the fee applicants' "lodestar" by taking "the proven number of hours reasonably expended on the case by an attorney" and multiplying that number "by his court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley*, 461 U.S. at 433). Thus, the court makes the following calculations:

| Attorney | Hours Expended | Hourly Rate | Lodestar |
|---|---|---|---|
| David A. Friedman | 1294.6 | $300 | $388,380.00 |
| William E. Sharp | 30.1 | $180 | $5,418.00 |
| | | Total: | $393,798.00 |

The defendants argue that the fee award should be reduced by 20% to account for the work performed in the companion Harlan County case. The plaintiffs have not billed for any work attributable to the specific defendants from the Harlan County case. All communications with Harlan County clients, all time

devoted to drafting the complaint and separate pleadings, and all time devoted to the separate certiorari petition was deleted from the time records. All of the time entries submitted in this motion apply specifically to McCreary and Pulaski Counties.

The defendants also argue that attorney fees in this case are unjust because of special circumstances. Prevailing parties in civil rights litigation are awarded attorney fees "unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The defendants assert that their limited finances are a special circumstance warranting a fee reduction, and, alternatively, that other cases demonstrate they were acting in good faith.

The defendants cannot now escape the consequences of their litigation choices, including refusing to remove the displays or settle the case. They began the case with a stand-alone display of the Ten Commandments, indisputably unconstitutional under then-settled law. They proceeded to reaffirm that their decisions were grounded upon religious purposes, yet involving public places. Continuing to defend such displays and such motives, they appealed court decisions to the Sixth Circuit and the Supreme Court. The defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff[s] in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580, n.11 (1986) (citation omitted). Additionally, a defendant's good faith is not a special circumstance rendering a fee award unjust. *Phelan v. Bell*, 8 F.3d 369, 374

13

n.5 (6th Cir. 1993) (citing *Morscott, Inc. v. Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991)). Thus, the court finds no special circumstances that would render the award in this case unjust.

The court, after considering the reasonableness of the requested attorney fees and the defendants' objections to the amounts, will not reduce the lodestar amount. Therefore, the plaintiffs are entitled to an award of attorney fees in the amount of $393,798.00.

### C. Costs

The plaintiffs also seek to recover their litigation expenses in the amount of $8,133.34.[4] The defendants do not object to the reasonableness of the costs. Therefore, the plaintiffs are entitled to an award of costs in the amount of $8,133.34.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the plaintiffs' motion for attorney fees and costs (R. 179) is **GRANTED**, and the plaintiffs are entitled to an award of attorney fees in the amount of $393,798.00, and an award of costs in the amount of $8,133.34.

Signed on  March 13, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

---

[4] The itemized list of litigation expenses is attached to a separate filing. *See* Litigation Expenses, attached as an exhibit to R. 184.

14